UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ALBERT LAMAR COPPAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-1143 |
| ) | |
| ILLINOIS BELL TELEPHONE CO., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Now before the Court is Defendant Illinois Bell Telephone Co.'s ("Bell") Motion for Summary Judgment. For the reasons set forth below, the motion is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as the claim asserted in the Complaint presents a federal question under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## BACKGROUND

Plaintiff Albert Lamar Coppage ("Coppage") began working for Bell on December 5, 1999, out of Bell's garage in Peoria, Illinois. Coppage was employed as a customer systems technician. In the year of his termination, his job attendance and performance were poor enough to lead to numerous written warnings. In January 2005, he received a first written warning for job performance. In April 2005, he received a second written warning with a 1-day suspension

for job attendance. In May 2005, Coppage again received a second written warning and 1-days suspension for job attendance. He was issued a final written warning with a 3-day suspension on May 13, 2005, for calling in sick and not calling at all in the days leading up to May 13th. Finally, in September 2005, he received a second written warning and 1-day suspension for poor job performance and a final written warning and 3-day suspension for job presence.

During his time with Bell, Coppage was subject to Bell's Code of Business Conduct. Though it was employee practice not to sign the Code's Acknowledgment Form, Coppage did receive and review the Code of Business Conduct during his employment. Under the heading "Substance Abuse," the Code provides:

> *Employees must be fit to perform their jobs - and that means not working under the influence of alcohol or illegal substances . . .*
>
> Drug and alcohol abuse threatens SBC's safety goals and the existence of a productive and efficient workplace . . .
>
> SBC also strictly prohibits the illegal use, possession, sale, attempted sale, conveyance, distribution, or manufacture of illegal drugs or controlled substances while engaged in any company activity, on company premises, or in company vehicles.
>
> Employees are forbidden from reporting to work, driving on company business or driving a corporate vehicle while under the influence of . . . any illegal drug.

Defendant's Exh. C at ATT 16-17.

Also during his time with Bell, Coppage was a member of the International Brotherhood of Electrical Workers, Local 21 ("the Union"). Under the terms of Bell's and the Union's Collective Bargaining Agreement, Bell would notify the Union of its plan to dismiss an employee for "just cause." The Union could then request a Union Management Review Board meeting ("dismissal panel") to discuss the reasons for the planned dismissal. The meeting provides the employee and his/her Union representatives a chance to present facts which the

employee believes the employer should know, and provides the parties with a chance to resolve their issues.

On September 12, 2005, Coppage suffered an on-the-job accident when he came down an incline holding a ladder on his left shoulder, the ladder fell off his shoulder as he slipped on the incline, straining his shoulder. Coppage's direct supervisor, Nathan Ciota ("Ciota"), took him to the hospital where Ciota directed him to take a drug test and Coppage refused to do so. When the Union steward, David Scott Poland ("Poland"), was contacted after Coppage refused to take the drug test, Poland told Coppage he could seek treatment if he had a drug problem. Poland further advised that he could contact Defendant's Employee Assistance Program ("EAP") to get help for drug abuse problems. Before that time, Coppage had not sought the help of the EAP. Following Poland's advice and Ciota's direction that he take the drug test, he contacted the EAP and submitted to a drug test on September 13, 2005. The drug test returned a positive for substance abuse (cocaine). As a result, Coppage was suspended pending dismissal.

On November 7, 2005, the dismissal panel meeting was held regarding Coppage's possible termination. Representing Bell at the meeting were Jerry Ouellette ("Ouellette"), area manager responsible for the garage out of which Coppage worked, and Steve Hansen ("Hansen"), Bell's lead labor relations manager. With Copapge were two Union Representatives, Bill Henne and Mike McCormick. At the dismissal panel, Coppage explained that he had not used cocaine within four or five days of his accident, but that he used cocaine the evening of the accident. He further explained that drugs were part of the reason for his poor attendance. Following the meeting, Ouellette spoke with his supervisor and Hansen, and finally made the decision to terminate Coppage. Bell terminated Coppage effective November 11,

2005.

On June 20, 2008, Coppage filed his Complaint alleging discrimination on the basis of his race. Bell has now moved for summary judgment. The matter is fully briefed and this Order follows.

## DISCUSSION

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in

favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

### Plaintiff's Race Discrimination Claim

In order to prevail on a race discrimination claim under Title VII of the Civil Rights Act of 1964, a plaintiff may use the direct or indirect method of proving discrimination.[1] Under the indirect method, a plaintiff must establish a prima facie case showing: 1) he is a member of a protected class, 2) his job performance met his employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) similarly situated individuals not of the plaintiff's class were treated more favorably than the plaintiff. *Burks v. Wis. Dep't. of Transp.*, 464 F.3d 744, 750 (7th Cir. 2006). If the plaintiff can first establish his prima facie case under the indirect method, the burden shifts to the defendant to offer a permissible, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973); *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007). If the defendant satisfies its burden, the plaintiff must then show the defendant's purported reasons are a pretext for discrimination. *Id.* If the plaintiff is unable to establish his prima facie case, the defendant is entitled to summary judgment. *Randle v. LaSalle Telecomm., Inc.*, 876 F.2d 563, 568 (7th Cir.

---

[1] Coppage's Complaint does not specifically point to any direct or circumstantial evidence which would enable him to prove race discrimination using the direct method of proof. See *Rudin v. Lincoln Land Cmty Coll.*, 420 F.3d 712, 720 (7th Cir. 2005) (putting forth evidence of discriminatory motivation is the way to proceed under the "direct method"). Instead, his Complaint discusses "similarly-situated non-black employees," making the discussion under the indirect method the appropriate one here.

1989).

## A. Plaintiff's Prima Facie Case

The parties do not dispute that Coppage is a member of a protected class, nor that he suffered an adverse employment action. They do dispute whether he was performing his job satisfactorily and whether similarly situated employees not of his protected class were treated more favorably than he was. A district court must look to whether an employee was performing well at the time of his/her termination to properly evaluate whether he/she was meeting the employer's legitimate performance expectations. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002).

Here, in the year Coppage was terminated, 2005, he received six separate written warnings related to job performance, attendance, and job presence. He was counseled four separate times for reasons including sleeping on the job, not showing up to work, calling in sick, not working during working hours, and not submitting timesheets as required.[2] In total, he was counseled or warned ten times in the nine months leading up to his November 11, 2005, termination. Coppage admits that he received written warnings but explains that only attendance was the issue in his sixth year with Bell, not poor job performance. However, the record clearly shows that he was warned regarding his job performance in addition to being warned about his job attendance. Regardless, Coppage clearly failed to meet Bell's legitimate performance

---

[2] In his Declaration, Hansen explained that Bell maintains an internal computerized database that allows Managers to keep track of counseling, disciplinary meetings, and other employment related interactions with employees and their Union representatives. The dates of each instance of Coppage's warning or counseling were recorded in the database, and occurred between January 7, 2005, and September 6, 2005.

expectations due to both his poor attendance and instances of poor job performance.

Coppage also violated Bell's Code of Business Conduct when he tested positive for cocaine in 2005. As set forth above, the Code provides that employees must be fit to perform their jobs, meaning that employees must not be under the influence of illegal substances while working. Though nothing in the record directly shows that Coppage was under the influence of cocaine during working hours, he did refuse to take the drug test following his on-the-job accident because he was concerned he would not pass the test. Coppage Dep. p. 60. Furthermore, he admits that his job attendance was affected because of his cocaine use. He presents only his own assertions that his attendance, not his job performance, was the issue leading up to his termination, and that he refused to take the drug test because he had never been asked to do so before following an on-the-job injury, and he wanted to seek Union guidance first. Bell correctly points out that Coppage's reasons for refusing the drug test are immaterial here. The fact remains that his drug test, taken after reporting to work on September 13, 2005, returned positive for substance abuse, in violation of Bell's Code of Business Conduct.

It is clear from Bell's evidence that attendance and abstaining from substance abuse are part of the overall job performance considered by Bell to determine whether its employees are meeting its legitimate expectations. Given the 2005 warnings, suspensions, counseling sessions, drug results, and Coppage's own admissions in the record, there is no question that he failed to satisfy Bell's legitimate performance expectations at the time he was terminated.

Next, Coppage contends that similarly situated non-black employees who violated Bell's Code of Business Conduct were given back-to-work agreements, but that he was denied such an

agreement.[3]  Plf.'s Complaint p. 6; Plf.'s Response to MSJ p. 8.  At no time was he offered such an agreement, and the option of one was never raised by the Union.  In order to show that employees not of a plaintiff's protected class were treated more favorably than he, the plaintiff must show that they were similarly situated with respect to performance, qualifications, and conduct.  *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 644 (7th Cir. 2006) (quoting *Snipes v. Ill. Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002)).  That means that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  *Id.* (quoting *Snipes*, 291 F.3d at 463).

Here, Bell's lead labor relations manager, Hansen, explained that no back-to-work agreement was offered to Coppage because Hansen had no concerns that Coppage's termination might later be questioned given his admitted violations of the Code of Business Conduct.  In their depositions, Coppage and Poland named seven other employees who they believe may have been offered agreements instead of being terminated for misconduct:  Jeff Noonen, Nick Ingalls, Brett Cahill, Kevin Schneider, Tim Daehbelin, Mike Hall, and Richard Kerr.  Coppage and Poland were unable to state that each of the other seven employees experienced the same thing as Coppage - testing positive for illegal drugs while on duty in response to a drug test initiated by Bell.  Another factor distinguishing Coppage from six of the seven other employees is that

---

[3] Hansen, Bell's lead labor relations manager, explained back-to-work agreements as those entered into when a company, its employee, and the Union agree that the employee will be subject to termination if the employee engages in further misconduct in violation of the agreement's terms.  The employee and/or Union must present compelling evidence at a dismissal panel, sufficient to cast doubt on a termination decision by the employer, before a back-to-work agreement will be offered.

they did not share the same manager. Ouellette, Coppage's area manager responsible for the garage out of which Plaintiff worked, had no managerial authority over the garage or over Noonen, Ingalls, Cahill, Schneider, Hall, or Kerr at the time those employees may have been offered back-to-work agreements. Ouellette did have managerial authority over Coppage at the time he was allegedly denied a back-to-work agreement. Hansen explained that the seventh employee, Tim Daehbelin, was suspended pending termination because he had lied to Bell about attending the funeral of a grandparent when it was really the funeral of a close family friend. It was not until the Union and other employees protested Bell's treatment of Daehbelin that he was offered a back-to-work agreement. No similar protests appear to have occurred on behalf of Coppage following his suspension. Bell further distinguishes Coppage from Daehbelin in that the latter had been with Bell for eighteen years and had an overall excellent work record.

   Coppage is unable to show that similarly situated employees not of his protected class were treated more favorably by being offered back-to-work agreements after violating Bell's Code of Business Conduct. He cannot establish that he has personal knowledge of the circumstances surrounding the seven other named employees who allegedly received back-to-work agreements after they violated Bell's Code of Business Conduct. While Poland does appear to have personal knowledge of the circumstances surrounding some of the seven other named employees, his statements fall short of adequately establishing that the seven other named employees were similarly situated to Coppage. Instead, Bell's evidence shows that the seven other named employees and Coppage did not share the same supervisor or engage in the same conduct. Though the record shows that some of the other named employees had some type of substance abuse problems, Bell correctly points out that the evidence does not establish that

those employees were abusing substances while on duty, as Coppage was.[4]  Plf.'s Dep. pp. 79, 84, 86, 89, 91-92; Poland Dep. p. 44.

Coppage appears to rely on Poland's statements - "[t]here was never any line drawn in the sand on any date [to get help]" - to support his contention that he was not treated as well as other employees who sought help for substance abuse, as he did after testing positive.  Plf.'s Response to MSJ ¶ 36; Poland Dep. p.47-48.  Nevertheless, Coppage's and Poland's assertions together are simply insufficient to create a triable issue of fact as to whether similarly situated employees not of Coppage's class received better treatment.  See *Szymanski v. Rite-Way Lawn Maint. Co., Inc.*, 231 F.3d 360, 364 (7th Cir. 2000) (noting that a nonmoving party cannot survive a motion for summary judgment with merely a scintilla of evidence supporting its position).  Therefore, Coppage is unable to establish his prima face case of race discrimination and Bell's Motion for Summary Judgment must be granted.

**B.  Pretext**

Bell points to the facts that Coppage first refused to take a drug test as directed by his direct supervisor, and then he tested positive for cocaine after reporting for duty in violation of Bell's Code of Business Conduct.  Bell contends that these facts provide the legitimate, non-discriminatory reasons for his termination.  In *Ellis v. UPS, Inc.*, the Seventh Circuit explained that "an employer's explanation [for termination] is a pretext for discrimination only if it is a lie."  523 F.3d 823, 828 (7th Cir. 2008).  Coppage does not point to any evidence in the record

---

[4]Bell further distinguishes off duty substance abuse and an employee's prompt reporting of such to management, from Coppage's on duty substance abuse and refusal to take a drug test. Hansen Decl. ¶ 10.  Additionally, Defendant's decision to discharge in the former situation would be harder to support if arbitration of the decision resulted.  *Id.*

which would show that Bell's proffered reasons for his termination are just lies. He states that McCormick, one of the Union representatives who accompanied him to his dismissal panel meeting, told him it was for sure that he'd get his job back. Plf.'s Response to MSJ ¶ 37. But as Bell correctly points out, that statement is unsupported in the record, and even if it were, it is immaterial what a Union representative may have told Coppage. Such a person was not responsible for the decision to retain or terminate him following his violation of the Code of Business Conduct. See *Venturelli v. ARC Cmty Services, Inc.*, 350 F.3d 592, 600 (7th Cir. 2003) ("A decisionmaker is the person responsible for the contested decision" (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003)). Coppage's broad assertion that he was not given a second chance through a back-to-work agreement, where other non-black employees allegedly had been, is not enough to create a triable issue as to whether Bell's reasons for Plaintiff's termination were a pretext for discrimination. See *Ajayi v. Aramark Bus. Services, Inc.*, 336 F.3d 520, 532 (7th Cir. 2003) (courts "do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions"). Therefore, Bell's Motion for Summary Judgment must be granted.

**CONCLUSION**

Coppage is unable to present evidence sufficient to establish his prima facie case of race discrimination under Title VII of the Civil Rights Act of 1964. He is also unable to present evidence sufficient to create a material issue as to whether Bell's proffered reasons for Coppage's termination were pretextual. Therefore, for the reasons set forth above, Defendant Illinois Bell Telephone Co.'s Motion for Summary Judgment is GRANTED.

Entered this 22nd day of October, 2009.

s/Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge